**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN  DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

REPUBLIC FRANKLIN INSURANCE
COMPANY, a foreign insurer,

           Case No.:

    Plaintiff,           Honorable:

-vs-

FLINN INSURANCE, INC., d/b/a
KORTHASE FLINN INSURANCE AND
FINANCIAL SERVICES AND KORTHASE
FLINN, a Michigan corporation,

    Defendants.

_____

**REPUBLIC FRANKLIN INSURANCE COMPANY'S**
COMPLAINT FOR DECLARATORY JUDGMENT

    Plaintiff Republic Franklin Insurance Company ("Republic"), through its

counsel, Provizer & Phillips, P.C., pursuant to 28 U.S.C. § 2201 and Rule 57 of

the Federal Rules of Civil Procedure, for its Complaint for Declaratory Judgment

against Defendants Flinn Insurance, Inc., d/b/a Korthase Flinn Insurance and

Financial Services and Korthase Flinn ("Flinn"), states as follows:

**INTRODUCTION AND NATURE OF ACTION**

    1.    This is an action for declaratory judgment pursuant to 28 U.S.C. §

2201, *et seq.*, and Rule 57 of the Federal Rules of Civil Procedure to determine and

resolve questions of actual controversy and dispute concerning the availability of

and scope of coverage, if any, for Flinn under one of the errors and omission insurance policies issued to Flinn bearing Policy No. 4195266 EO with the policy term of 6/11/17-18 and the renewal of that policy bearing the same policy number for the term 6/11/18-19.

2.     This action stems from an underling claim and subsequent lawsuit by Heartwood Mills, LLC ("Heartwood") arising out of a fire loss that occurred on March 6, 2018 at a saw mill building owned by Heartwood which caused damages to the building and equipment and allegedly caused business income  loss to Heartwood.

3.     Heartwood had been insured for property damage due to fire and business income  loss under a policy issued by Pennsylvania Lumberman's Mutual Insurance Company ("PLM"). Said policy had been placed by Flinn as Heartwood's independent insurance agent.  The PLM policy provided business income ("BI") loss coverage with a policy limit of $577,000.

4.     Heartwood  claimed and alleged that it had requested Flinn to increase the BI loss limits to $4,478,250 prior to the fire loss and that Flinn had agreed to do so and represented to Heartwood that it had done so, but that the limit had not in fact been increased.  Heartwood has claimed that it incurred a BI loss substantially in excess of $3,000,000 and has suffered a financial loss as a result of the alleged error or omission of Flinn in failing to increase the policy limit.

5.     Flinn first notified Republic of the claim by Heartwood to Republic in August 2019, which was untimely. Heartwood subsequently filed suit against Flinn on January 20, 2020 and tendered the suit to Republic. Republic reserved its rights and assigned counsel to represent Flinn on the claim and after Heartwood filed suit it again reserved its rights and assigned the same counsel to defend Flinn claimed in the suit subject to its reservation of rights.

6.     Republic asserts that there is no coverage under its policies as Flinn breached its duties to Republic and failed to notify Republic as soon as reasonably possible or as soon as practicable of any "wrongful act" which may result in a claim, or immediately send copies of demands or notices in connection with the claim or immediately or as soon as possible notify Republic of a claim and record specifics of the claim.

## THE PARTIES

7.     Plaintiff Republic is an insurer domiciled in the State of Ohio and with its principal place of business in the State of New York and conducts business in this district.

8.     Defendant Flinn is a Michigan corporation, with its principal place of business in Charlevoix County, Michigan and conducts business in this district.

## JURISDICTION AND VENUE

9.     Pursuant to 28 U.S.C. § 1332, this Court has jurisdiction over this action because the controversy is between citizens of different states and the amount in controversy, exclusive of costs, interest and attorney fees, exceeds the minimum jurisdictional amount of $75,000.  Jurisdiction is also proper pursuant to 28 U.S.C. § 2201 particularly because this action would settle the controversy between Republic and Flinn regarding the existence of insurance coverage for Flinn if any, under one or more of the Republic policies.

10.     Venue is proper in the Western District of Michigan, Southern Division, pursuant to 28 U.S.C. § 1391(b)(1) because Defendant Flinn conducts business in and is domiciled in Charlevoix, Michigan and Republic conducts business in this District.

## GENERAL ALLEGATIONS

11.     Upon information and belief, Heartwood owned property, buildings and facilities at 4740 Skop Road, Boyne Falls, Charlevoix County, Michigan, including a saw mill building and related equipment, and was engaged in the business of operating a saw mill and manufacturing wood products for sale.

12.     Defendant Flinn, in 2017-2019, was an independent insurance agency, placing and servicing insurance coverage for its customers, including Heartwood, beginning in about May, 2017.

13.     At all relevant times, Darlin LaFave and Amanda Truman were employees of Flinn acting in the course and scope of their employment for Flinn. Truman and Flinn were assigned, at relevant times and in part, management responsibility related to Flinn's errors and omissions insurance coverage with Republic and also handled the Heartwood account.

14.     At all relevant times, Randall Flinn was the President and CEO of Flinn.

15.     On or about May 2017, Flinn, by Lafave, took over as Heartwood's insurance agency for property and other coverage, including the then existing PLM policy insuring Heartwood for BI loss with a $577,000 BI limit. Flinn had the policy re-issued with the same BI limit.  Flinn then allegedly had it renewed with the same BI limit.  That PLM policy with the $577,000 BI limit was allegedly in effect on the date of the fire.

16.     Heartwood asserts that in a meeting in July 2017, attended by LaFave and others on behalf of Flinn, Heartwood requested and Flinn agreed to increase the BI limits to $4,478,250 as Heartwood was allegedly building a new saw mill with greater capacity.

17.     Heartwood asserts that LaFave, on behalf of Flinn,  prepared and sent to Heartwood emails on 7/20/17 and 10/6/17 representing that she was increasing or had increased the BI limits to $4,478,250 and that she  prepared and sent a

Statement of Values ("SOV") to Heartwood showing the increased BI limit and representing that the SOV with the increased BI limit reflected the current values on Heartwood's policy with PLM.

18.     Heartwood asserts that it signed the SOV showing the higher BI limit and delivered it to LaFave during the week of October 9, 2017.

19.     After the fire and on or about May 10, 2018, Truman met with Heartwood to discuss the upcoming PLM policy renewal and Heartwood noted the lower $577,000 BI limit on the existing policy and renewal and questioned it and told Truman that LaFave was supposed to have increased the BI limit and that there was a discrepancy, i.e., error, in the BI limit as he believed the limit had been increased.

20.     On the same day, May 10, 2018, Truman found in the agency records, the 7/20/17 and 10/6/17 LaFave emails with the SOV showing the higher limit, and sent them with an email to Flinn's President and CEO Randall Flinn, thereby informing Flinn's CEO of the alleged discrepancy and alleged error.

21.     Heartwood's principal emailed Truman on 6/5/18 and 6/7/18 again indicating that there is a mistake or error in the BI limit and enclosing the LaFave 7/20/17 and 10/6/17 emails and SOV allegedly showing the increased BI limit.

22.      Truman  asks PLM in several emails whether they have any evidence of a request to increase the  BI limits or whether they received the SOV with

allegedly higher BI limit, saying "I have an issue with the Business Income on this Policy" and "I can't find where this was ever communicated on your end", and "we have a major discrepancy on the BI value to what is on the policy versus what the insured believes is on the policy".

23.     No later than 6/22/18, Flinn is told by PLM it had no record of a request to increase the BI limit.

24.     Flinn did not notify Republic of Heartwood's claim or Heartwood's allegation of a  wrongful act or error.

25.     Heartwood continues to ask for an explanation for the lack of higher BI limits,  and on 11/11/18, Heartwood says that if the limit can't retroactively be increased to apply to the fire loss "then we have a serious problem on our hands. If that is your position, I frankly don't know how this occurred but someone at your agency or at Pennsylvania Lumberman's Mutual clearly made a mistake..."

26.     Flinn still did not notify Republic of the Heartwood claim or allegations that Flinn committed an error or wrongful act.

27.     On or about August 12, 2019, Flinn received a letter from an attorney representing Heartwood asserting that Flinn committed an error or wrongful action in not increasing the BI limit on the PLM policy and by representing to Heartwood that the limit had been increased. The letter asserted that Heartwood had already incurred a BI loss in excess of $3,000,000 and the loss was increasing.

28.     On 8/13/19, over 1 year and 3 months after Flinn first learned of Heartwood's allegation of wrongful conduct or error,  and the claimed discrepancy or error  in BI limits, Flinn first notified Republic of Heartwood's claim or assertion of a mistake, error or wrongful act.

29.     Republic promptly issued a reservation of rights letter  including with respect to Flinn's duties in the event of a wrongful act, claim or suit under the Republic policies and retained counsel on behalf of Flinn to address Heartwood's claim.

30.     On or about January 10, 2020, Heartwood filed suit in the State of Michigan in the  Circuit Court for the County of Charlevoix, Case No.20-0988-26-CK, asserting that Flinn committed wrongful acts and  errors, was negligent, and made misrepresentations with respect to the BI limits, and in failing to obtain the higher BI limits Heartwood alleges it requested.  A copy of the Complaint is attached as Ex. 1.

31.     Republic issued an amended and supplemental reservation of rights letter,  again reserving rights with respect to Flinn's duties in the event of wrongful act, claim, or suit under the Republic policy and had counsel already retained on behalf of Flinn, defend the suit.

## THE POLICIES

32.     Republic issued a series of claims made errors and omissions policies

to Flinn dating back to 2002, including Policy No. 419522 EO for the policy terms

6/11/17-18 and 6/11/18-19. A copy of those two policies are attached as Ex. 2, 3.

33. These policies provided coverage for Flinn in the event it suffered a

"loss", i.e. damages arising out of a "wrongful act" as defined in the policy, and

where a " claim" is first made against Flinn during the policy period or any

extended reporting period. The policies also provided a duty to defend "suits"

seeking covered "loss". If the wrongful acts occurs prior to the policy period then

there is coverage only if the insured had no knowledge that "such wrongful" act

was likely to give rise to a "claim":

**SECTION II - COVERAGE**

1. **Insuring Agreement**
   a. We will pay on behalf of the insured all "loss" to which this insurance applies.
   We will have the right and duty to defend the insured against any "suit" seeking such "loss" even if the allegations of the "suit" are groundless, false, or fraudulent. However, we will have no duty to defend an insured against any "suit" to which this insurance does not apply. We have the right, but not the duty, to appeal any judgment. We may, at our discretion:
   (1) Investigate any allegation of a "wrongful act"; and
   (2) Settle, according to the Settlement- Consent of The Insured Condition, any "claim" or "suit" that may result. But:
   **(a)** The amount we will pay for damages is limited as described in **SECTION V - LIMITS OF LIABILITY**;

and

    **(b)**    Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of "loss".

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **2.**
**Supplementary Payments.**

**b.**    This insurance applies only to "wrongful acts" which take place:

    **(1)**    In the "coverage territory";

    **(2)**    During the "policy period" and "claim" is first made against any insured during the "policy period" or any Extended Reporting Period provided; or

    **(3)**    Prior to the "policy period", but on or after the Retroactive Date, if any, shown in the Declarations for this policy, provided that prior to the effective date of this policy:

    **(a)** The insured did not give notice to any prior insurer of such "wrongful act";

    **(b)**    The insured had no knowledge that such "wrongful act" was likely to give rise to a "claim" hereunder; and

    **(c)**    The "claim" is first made against any insured during the "policy period" or any Extended Reporting Period provided.

**c.**    A "claim" will be considered first made at the earliest of the following times:

    **(1)**    When notice of such "claim" is received and recorded by any insured or by us, whichever comes first.

    **(2)**    When we make settlement in

accordance with paragraph **1.a.** above.

**(3)**    On the date during the "policy period" when the first written notice of any facts or circumstances which may subsequently give rise to a "claim" which would be insured hereunder is received by us from an insured. Any "claim" made against an insured arising out of such facts or circumstances after the date of receipt of such notice by us will be considered to have been made on the date we received the first notice of facts or circumstances. Only the policy in force on that date and no other shall apply to all "claims" from such facts or circumstances.

34.    Wrongful act is defined as:

13. "Wrongful act" means any negligent act, negligent error, negligent omission, or "personal injury" committed by an insured in the lawful performance of their duties for you.

35.    Claim is defined as:

2. "Claim" means written demand or written notice, including service of a subpoena, "suit" or demand for arbitration,, received by one or more insureds which alleges a "wrongful act" or asks for money or services.

36.    Flinn, as policyholder, was required to comply with certain duties in the event of a wrongful act,  claim, or suit:

**SECTION VI - CONDITIONS**
**1.**    **Duties In The Event Of Wrongful Act, Claim Or Suit**
    **a.**    You must see to it that we are notified in writing as soon as practicable of any

"wrongful act" which may result in a "claim".
To the extent possible, notice should
include:

**(1)** How, when and where the "wrongful act" took place;

**(2)** The names and addresses of persons involved in the "wrongful act" and witnesses; and

**(3)** The nature of the harm resulting from the "wrongful act".

**b.** If a "claim" is received by an insured, you must:

**(1)** Immediately record the specifics of the "claim" and the date received; and

**(2)** Notify us as soon as practicable. You must see to it that we receive written notice of the "claim" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses, subpoenas or legal papers received in connection with the "claim" or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation, settlement, or defense of:

**(a)** Any "claim" or "suit"; or

**(b)** Facts or circumstances which may subsequently give rise to a "claim"...

37.    A Michigan Amendatory Endorsement modified the duties of Flinn in

Conditions/Section VI:

**A.** With respect to the Duties in The Event Or "Wrongful Act," "Claim" or "Suit" Condition (Section VI):

1.    Notice given by or on behalf of the Insured to our authorized agent, with particulars sufficient to identify the insured, shall be considered notice to

us.

2. The reference to paragraph d.  is amended to read paragraph e.

3. The following is added:

d. Failure to give notice required by this Condition within the time period specified shall not invalidate any claim made by you if it shall be shown not to have been reasonably possible to give notice within the prescribed time period and that notice was given as soon as was reasonably possible.

## COUNT I

## <u>DECLARATORY JUDGMENT UNDER THE REPUBLIC POLICIES</u>

38. Republic incorporates by reference all of the allegations in paragraphs 1-37 above as if restated herein.

39. Republic asserts that there is no coverage under its policies issued to Flinn as Flinn failed to comply with its duties in the event of wrongful act, claim or suit in failing to timely notify Republic of an allegations of wrongful act, a wrongful act, or claim and in failing to timely forward demands and notices related to the allegations of wrongful act, wrongful act, or claim.

40. There is an actual case and controversy and Republic seeks a declaration from this Court that no coverage exists, including no duty to defend, for the Heartwood claim and suit as a result of Flinn's failure to comply with its duties under the policies.

41. Republic asserts that under Michigan law and with respect to these

claims made policies, that Republic has no obligation to prove or establish any prejudice, but if such obligation exists, Flinn's failure to comply with its duties under the policies did prejudice Republic with respect to its ability to contest coverage and with respect to its ability to respond to the Heartwood claim and suit.

42.     Republic asserts that coverage may be limited or excluded by or to the extent other policy terms, exclusions, definitions and conditions apply and Republic reserves its rights to limit or exclude coverage under such other policy terms, exclusions, definitions and conditions.

## RELIEF REQUESTED

43.     Republic requests that this Court declare that Flinn violated its duties under the policies and that no coverage exists, including no duty to defend, for Flinn with respect to the Heartwood claim and suit.

Republic further requests it be awarded costs and attorney fees so wrongfully incurred and such other relief as may be just and equitable under the circumstances.

PROVIZER & PHILLIPS, P.C.

BY:    */s/ Randall E. Phillips*
       RANDALL E. PHILLIPS (26053)
       Attorney for Plaintiff
       30200 Telegraph Road, Suite 200
       Bingham Farms, MI 48025
       (248) 642-0444
       Rphilips@p-ppc.com

Dated: April 16, 2020