UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

REPUBLIC FRANKLIN INSURANCE
COMPANY,

               Plaintiff,                                  Hon. Paul L. Maloney

v.                                           Case No. 1:20-cv-328

FLINN FINANCIAL, INC., d/b/a
Korthase Flinn Insurance and
Financial Services and Korthase
Flinn,

               Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Republic Franklin Insurance Company filed this diversity action against its insured, Flinn Financial, Inc., d/b/a Korthase Flinn Insurance and Financial Services and Korthase Flinn, seeking a declaratory judgment that no coverage exists, and it does not owe Flinn a duty to defend a lawsuit pending in Charlevoix County Circuit Court under the policies that Republic issued to Flinn. Republic alleges that is relieved from its defense and indemnity obligations due to Flinn's failure to provide timely notice of the wrongful act or claim to Republic.

Flinn has filed a motion to dismiss Republic's first amended complaint on the grounds that: (1) the Court should decline to exercise its discretion to entertain this action under the Declaratory Judgment Act, 28 U.S.C. § 2201; and (2) Republic fails to state a claim upon which relief can be granted. Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that the Court **DENY** Flinn's motion.

## I.    BACKGROUND

Flinn is an independent insurance agency with its principal place of business in Charlevoix County, Michigan. Flinn places and services insurance policies for its clients through various insurers. Republic has provided errors and omissions (E&O) insurance coverage to Flinn under a series of claims-made policies since 2002. (ECF No. 6 at PageID.125.) Relevant to this action, Republic provided coverage to Flinn under Policy No. 4195266, with a term of 6/11/2017–18 and a renewal term of 6/11/2018–19 (the Policies). (*Id.* at PageID.118.)

Heartwood Mills, LLC owns and operates a sawmill in Boyne Falls, Michigan. In May 2017, Flinn began handling Heartwood's insurance policies for property and other coverages. Flinn employees Darlin LaFave and Amanda Truman serviced Heartwood's account with Flinn and were also responsible for managing Flinn's E&O coverage with Republic. (*Id.* at PageID.121.) At the time Flinn took over Heartwood's account, Heartwood was insured for fire and business income loss under a Pennsylvania Lumberman's Mutual Insurance Company (PLM) policy, with a business income limit of $577,000. Flinn had the PLM policy re-issued and subsequently had it renewed with the same business income limit.

In July 2017, LaFave and other Flinn representatives met with Heartwood representatives regarding Heartwood's coverage. Heartwood requested that Flinn increase its business income coverage under the PLM policy as Heartwood was building a new sawmill with increased capacity. According to Heartwood, LaFave sent emails on July 20, 2017, and October 6, 2017, representing that she was increasing, or had increased, the business income limit to $4,478,250, and she prepared and sent a Statement of Values (SOV) to Heartwood showing the increased business income limit and representing that the SOV with increased business income limit reflected the current values on Heartwood's PLM policy. Heartwood claims that it signed the SOV showing the

2

higher limit and delivered it to LaFave during the week of October 9, 2017. (*Id.* at PageID.121–22.)

On March 6, 2018, a fire occurred at Heartwood's sawmill building, resulting in damage to the building and equipment and associated business income loss to Heartwood. On or about May 10, 2018, Truman met with Heartwood to discuss the upcoming renewal of the PLM policy. At that time, Heartwood's representative noted the lower $577,000 business income limit on the existing policy and renewal and told Truman that LaFave was supposed to increase the limit. The Heartwood representative said that there was a discrepancy in the limit and that he believed that it had been increased. The same day, Truman found LaFave's July 20 and October 6, 2017 emails with the SOV showing the higher limit and sent them to Randall Flinn, Flinn's President and CEO. Heartwood's representative emailed Truman on June 5 and 7, 2018, indicating that there had been a mistake or error in the business income limit and attaching LaFave's 2017 emails and the SOV. (*Id.* at PageID.122.) By June 22, 2018, PLM notified Flinn that it had no record of a request from Flinn to increase Heartwood's business income limit.

Heartwood continued to ask Flinn for an explanation regarding the discrepancy, and in November 2018 told Flinn that if the limit could not be retroactively increased to cover the fire loss, it would be a serious problem as someone at Flinn or PLM made a mistake. (*Id.* at PageID.123.) On August 12, 2019, an attorney representing Heartwood sent a letter to Flinn asserting that Flinn had committed an error or wrongful action in not increasing the PLM business loss limit while representing that it had done so and stating that Heartwood had already incurred a loss in excess of $3,000,000. Flinn notified Republic of Heartwood's claim or assertion of a mistake or error on August 13, 2019. Republic thereafter issued a reservation of rights letter and retained counsel for Flinn. In January 2020, Heartwood sued Flinn in the Charlevoix Circuit Court

asserting that Flinn was negligent and committed wrongful acts in failing to obtain the higher

business income limits when it represented that it had done so. (*Id.* at PageID.124.)

## II.    DISCUSSION

### A.    Declaratory Judgment Jurisdiction

A district court may decide, in its sound discretion, to entertain an action seeking a

declaratory judgment pursuant to 28 U.S.C. § 2201(a). *See Wilton v. Seven Falls Co.*, 515 U.S.

277, 288 (1995). The Sixth Circuit has explained the general considerations that should guide a

court's discretion in exercising jurisdiction over a request for a declaratory judgment:

> "The two principal criteria guiding the policy in favor of rendering declaratory
> judgments are (1) when the judgment will serve a useful purpose in clarifying and
> settling the legal relations in issue, and (2) when it will terminate and afford relief
> from the uncertainty, insecurity, and controversy giving rise to the proceeding. It
> follows that when neither of these results can be accomplished, the court should
> decline to render the declaration prayed."

*Grand Trunk W. R.R. Co. v. Consolidated Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984) (quoting

E. Borchard, Declaratory Judgments 299 (2d ed. 1941)). From these general considerations, the

Sixth Circuit has distilled the following five factors, one of which has three sub-factors, that

district courts should consider in deciding whether to entertain a declaratory judgment action:

(1) Whether the declaratory action would settle the controversy;

(2) whether the declaratory action would serve a useful purpose in clarifying the
legal relations in issue;

(3) whether the declaratory remedy is being used merely for the purpose of
"procedural fencing" or "to provide an arena for res judicata;"

(4) whether the use of a declaratory action would increase the friction between our
federal and state courts and improperly encroach upon state jurisdiction; [which is
determined by asking]

> a. whether the underlying factual issues are important to an informed
> resolution of the case;

4

b. whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and

c. whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action; and

(5) whether there is an alternative remedy which is better or more effective.

*Western World Ins. Co. v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2014) (alteration in original) (quoting *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554, 560 (6th Cir. 2008)). These factors focus a court's inquiry on "efficiency, fairness, and federalism." *Id.* (citing *Sherwin-Williams Co. v. Holmes Cty.*, 343 F.3d 383, 390–91 (5th Cir. 2003)).

Sixth Circuit guidance on the propriety of entertaining an insurance coverage declaratory judgment action when the underlying action is pending in state court has not always been clear. It has observed, on the one hand, that "we have held on a number of occasions that a district court should stay or dismiss complaints filed by insurance companies seeking a declaratory judgment as to their underlying state court lawsuits." *Travelers Indem. Co. v. Bowling Green Prof'l Assocs., PLC*, 495 F.3d 266, 273 (6th Cir. 2007). Yet, it has also affirmed that there is no per se rule precluding the exercise of jurisdiction in insurance coverage actions such as this. *See Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 812–13 (6th Cir. 2004). The guiding principle, however, seems to be simply that the district court must "take[ ] a good look at the issue and engage[ ] in a reasoned analysis of whether issuing a declaration would be useful and fair." *Hoey*, 773 F.3d at 759.

### 1.    Settle the Controversy/Serve a Useful Purpose

I consider the first two factors together, as they are closely related and courts often "reach[] the same conclusion for both." *Massachusetts Bay Ins. Co. v. Christian Funeral Dirs., Inc.*, 759 F.

5

App'x 431, 438 (6th Cir. 2018). Two lines of cases have developed regarding the first factor. The first "holds that such a judgment does not 'settle the controversy' between all relevant parties where, for instance, the state-court tort plaintiff has not been joined in the declaratory-judgment action." *United Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d 386, 397 (6th Cir. 2019). An example is *Bituminous Casualty Corp. v. J&L Lumber Co.*, 373 F.3d 807 (6th Cir. 2004), in which an individual was injured in a logging accident and sued the logging company in state court. The logging company's general commercial liability insurer filed a declaratory judgment action in federal court seeking a determination that it had no duty to defend or indemnify the logging company based on exclusions in its policies for employees. One of the issues in the state-court case, as well as in a separate Kentucky Department of Workers' Claims proceeding, was whether the injured plaintiff was an employee or an independent contractor. The court held that the declaratory judgment action would not resolve the controversy because the plaintiff in the underlying action "was not made a party to the declaratory judgment action [and] . . . any judgment in the federal court would not be binding as to him and could not be res judicata in the tort action." *Id.* at 814. The court further noted that the district court's declaration that the plaintiff was an employee "was contrary to two state court findings that [the injured plaintiff] was not an employee, complicating the underlying issues of liability." *Id.* The second line of cases "hold[s] that a declaratory judgment regarding coverage does 'settle the controversy' because it resolves the dispute between the insurer and insured over who will pay for the state-court litigation." *United Specialty*, 936 F.3d at 397. *See Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1066 (6th Cir. 1987), *abrogation on other grounds recognized by Scottsdale Ins. Co. v. Roumph*, 211 F.3d 694 (6th Cir. 2000) ("Indeed, we ourselves have reinforced the propriety of early resolution of insurance coverage disputes via a § 2201 action.").

6

In my judgment, this case is most similar to *Scottsdale Insurance Co. v. Flowers*, 513 F.3d 546 (6th Cir. 2008), and *Northland Insurance Co. v. Stewart Title Guaranty Co.*, 327 F.3d 448, 454 (6th Cir. 2003), both of which concluded that the declaratory judgment action satisfied the first factor because it settled the insurance coverage dispute between the parties. In *Flowers*, the court reasoned that the issue before it—whether the policy covered the insured's employee—"was not and could not be considered in the state court action because Scottsdale was not a party to that action" and determination of the coverage question "did not require the district court to inquire into matters being developed through state court discovery." 513 F.3d at 556; *see Northland*, 327 F.3d at 454 (holding that while a declaratory judgment action would not end the underlying state-court dispute, "it would settle the controversy regarding the scope of insurance coverage issued by Northland to Cailu, and whether Northland had a duty to defend the insureds").

Here, there is no reasonable possibility that the issue presented in this declaratory judgment action will be determined in the state-court case. Heartwood's claims in the state-court case focus on Flinn's conduct prior to the fire *vis a vis* its lack of follow-through on its alleged commitment to increase Heartwood's business income coverage, whereas the focus in this case is on when Flinn became aware that Heartwood was asserting a wrongful act and the sufficiency of Flinn's notice to Republic. Thus, this action will settle the coverage dispute between Republic and Flinn. *See Podiatry Ins. Co. of Am. v. Povich*, 707 F. Supp. 2d 716, 718, 720–21 (W.D. Mich. 2010) (declaratory judgment action presenting issue of whether the insured complied with the policy's notice provisions would resolve the coverage issue between the insurer and its insured). For the same reasons, this action will serve a useful purpose in clarifying the legal relations in issue because it will "settle[] the legal relationship of the insurer and the insured." *United Specialty*, 936 F.3d at 398–99.

### 2.    Procedural Fencing

As Flinn concedes, the third factor, procedural fencing, or the "race for *res judicata,*" *Grand Trunk*, 746 F.2d at 326, is not present here as Republic filed this case after the state-court proceeding was commenced. Thus, this factor carries no weight in the analysis.

### 3.    Friction Between State and Federal Courts

As set forth above, the Sixth Circuit has identified three factors that a district court should consider in deciding whether the exercise of jurisdiction will cause friction between the federal and state court. The first factor—whether the underlying factual issues are important to an informed resolution of this case—does not suggest that a decision by this Court will encroach upon the state court's domain in deciding the underlying case. As noted above, the focus of the underlying action is whether Heartwood had requested an increase in the business income limit *prior to the fire*, whereas the focus here is when Flinn first became aware *after the fire* that Heartwood was asserting that Flinn had committed a wrongful act, *i.e.*, a negligent act, error or omission. While the cases will undoubtedly involve some overlapping evidence, the issues are entirely distinct such that there is no potential for inconsistent factual findings. *See Flowers*, 513 F.3d at 560.

The next issue is whether the state court is in a better position than this Court to evaluate the factual issues. Sixth Circuit cases generally recognize that state courts are in a better position than federal courts to interpret and apply their own insurance law, *see*, *e.g.*, *Bituminous Cas. Corp.*, 373 F.3d at 815 ("Second, both the issue of Shields's employment status and the issue of the insurance contract interpretation are questions of state law with which the Kentucky state courts are more familiar and, therefore, better able to resolve."), but this is not always a compelling consideration, for it can hardly be disputed that federal district courts apply state insurance law as

a matter of course to decide routine insurance issues. Instead, "[a] district court would be wise to decline jurisdiction if a declaratory action involved novel, unsettled, or complex issues of state law." *Hoey*, 773 F.3d at 760. For example, in *Bituminous Casualty*, the court noted that the insurance coverage issue presented previously-unresolved questions concerning workers compensation exclusions. 373 F.3d at 815. Here, Michigan law regarding notice to an insurer is well established, and although Flinn argues that "this interpretation of the E&O policy is a novel issue of state law" (ECF No. 10 at PageID.256), it fails to explain the novelty. Thus, the state court is not necessarily in a better position than this Court to determine the coverage issue.

Finally, the last factor, "focuses on whether the issue in the federal action implicates important state policies and is, thus, more appropriately considered in state court." *Flowers*, 513 F.3d at 561. Here, there is no indication that this action necessarily implicates important state policies, other than the routine application of Michigan insurance law. Nonetheless, because federal laws are not at issue, this last consideration weighs against exercising jurisdiction, *see Massachusetts Bay Ins. Co.*, 759 F. App'x at 440, but only slightly.

### 4.    Alternative Remedy

The final factor asks whether there is alternative state remedy which is better or more effective than a federal declaratory judgment action. Although Sixth Circuit cases, once again, offer conflicting guidance on this factor, the best approach is a "fact specific" inquiry "involving consideration of the whole package of options available to the federal declaratory plaintiff." *Flowers* 513 F.3d at 562. As Flinn notes, Michigan also has a declaratory judgment procedure that is available to Republic. *See* M.C.R. 2.605. Other than indicating that a state-court declaratory judgment action would address the state-law issues presented here, Flinn does not convincingly explain why a state-court declaratory judgment would be better or more effective, but one

possibility points to the advantage of judicial economy; the state court might consolidate both actions, allowing a single judge to decide all issues. *See id.* On the other hand, there is no indication that a state-court declaratory judgment action would provide a more expedient determination than a declaratory judgment action in this Court.

On the whole, this factor weighs against exercising jurisdiction. *See Massachusetts Bay Ins. Co.*, 759 F. App'x at 441–42.

### 5.    Balancing the Factors

Having taken the required "good look," I conclude that the *Grand Trunk* factors, properly weighed, support the exercise of declaratory judgment jurisdiction in this case. First, even though a declaratory judgment action will not result in a global resolution of the related controversies, it will settle the coverage dispute between Flinn and Republic and serve a useful purpose by clarifying their legal relationship. That is, a declaration of the parties' rights and obligations will determine which party is financially responsible for paying defense costs in the Heartwood lawsuit. *See Hoey*, 773 F.3d at 760–61. Next, there is no indication that exercising jurisdiction in this case will cause friction between this Court and the state court. The state and federal actions involve different issues, there is no realistic possibility of conflicting factual findings, and state law governing the resolution of the coverage issue is well defined. This consideration thus weighs in favor of exercising jurisdiction. Finally, although a state-court declaratory judgment action would be more advantageous than a federal proceeding, this factor does not outweigh the other factors supporting the exercise of jurisdiction.

Accordingly, I recommend that the Court exercise its declaratory judgment jurisdiction in this case.

**B.**    **Motion to Dismiss**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim must be dismissed for failure to state a claim on which relief may be granted unless the "[f]actual allegations [are] enough to raise a right for relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). As the Supreme Court has held, to survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." If the complaint simply pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* As the Court further observed:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . .Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . .Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief."

*Id.* at 678-79 (internal citations omitted).

When resolving a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case, and exhibits attached to the defendant's motion to dismiss provided they are referenced in

the complaint and central to its claims. *See Bassett v. National Collegiate Athletic Assoc.*, 528 F.3d 426, 430 (6th Cir. 2008).[1]

Republic alleges that it owes no duty to defend or indemnify Flinn in the Heartwood litigation because Flinn breached its duty under the Policies to provide Republic timely notice of Heartwood's allegations of a wrongful act or a claim as defined in the Policies. The Policies provide E&O coverage for "wrongful acts" where the "'claim' is first made against any insured during the 'policy period.'" (ECF No. 6-3 at PageID.174.). The Policies define "claim" and "wrongful act" as follows:

> 2. "Claim" means a written demand or written notice, including service of a subpoena, "suit" or demand for arbitration, received by one or more insureds which alleges a "wrongful act" or asks for money or services.
>
> 13. "Wrongful act" means any negligent act, negligent error, negligent omission, or "personal injury" committed by an insured in the lawful performance of their duties for you.

(*Id.* at PageID.172–73.)

The Policies also impose notice obligations on the insured. In particular, the insured must notify Republic "in writing as soon as practicable of any 'wrongful act' which may result in a 'claim.'" (*Id.* at PageID.179.) In addition, if the insured receives a "claim," the insured must provide Republic written notice of the claim "as soon as practicable" and "[i]mmediately send [Republic] copies of any demands, notices, summonses, subpoenas or legal papers received in connection with the 'claim.'" (*Id.* at PageID.180.) The Policies contain a Michigan Amendatory

---

[1] Flinn notes that Republic has attached to its response ten exhibits that were not attached to the first amended complaint and requests that they be disregarded in deciding the Rule 12(b)(6) motion to dismiss. (ECF No. 15 at PageID.343–44.) I have done so and, accordingly, issue my recommendation based solely upon Republic's allegations in its first amended complaint.

Endorsement that modifies the notice provisions to provide that the insured must give notice of a claim "as soon as was reasonably possible" if it cannot be given immediately. (*Id.* at PageID.151.)

Flinn argues that Republic fails to state a claim on two grounds. First, it contends that Heartwood did not allege a "wrongful act" until August 12, 2019, when Heartwood's attorney sent the letter to Flinn. And, Flinn says, since it gave notice to Republic the next day, it clearly fulfilled its notice obligations under the Policies. The argument goes like this. Republic has unquestionably alleged that as early as May 10, 2018, and no later than November 11, 2018, Heartwood had complained to Flinn about: (1) a discrepancy; (2) an error; (3) a mistake; and (4) a serious problem. However, a "wrongful act" requires a "negligent act, negligent error [or] negligent omission." Flinn argues that Heartwood never notified Flinn that one of its employees was negligent. (ECF No. 10 at PageID.259–60.)

Michigan law construes insurance contracts generally in the same manner as other contracts. *Farmers Ins. Exch. v. Kurzmann*, 257 Mich. App. 412, 417 (2003). An insurance policy must be read as a whole in order to discern and effectuate the parties' intent. *Id.* at 418. Courts must accord the terms of a policy their plain and ordinary meaning. *Auto-Owners Ins. Co. v. Churchman*, 440 Mich. 560, 566 (1992). The definition of a term may be established by reference to a dictionary. *Michigan Millers Mut. Ins. Co. v. Bronson Plating Co.*, 445 Mich. 558, 568 (1994). The Merriam-Webster online dictionary defines the word negligent as "marked by or given to neglect especially habitually or culpably," and "marked by a carelessly easy manner."[2] The

---

[2] *See* https://www.merriam-webster.com/dictionary/negligent?src=search-dict-box (last visited Feb. 24, 2021).

Oxford English Dictionary defines negligent as "inattentive to duty; not attending to, or doing, what ought to be done; neglectful."[3]

While Heartwood, may not have used the term "negligent" when it informed Flinn that a discrepancy existed in the business income limits in the Policies or that LaFave made an error or a mistake by not obtaining the increased limit she said she had or would obtain, Republic's allegations suffice for pleading purposes under *Twombly*/*Iqbal* to show that Heartwood's statements alerted Flinn that its employee had committed a careless error or omission or was inattentive to her duty as Heartwood's agent to obtain the increased coverage. In other words, Republic has sufficiently alleged that as of June 2018, Flinn was aware of a "wrongful act" which could result in a claim.[4]

Second, Flinn argues that Republic fails to allege that Flinn unreasonably or impracticably delayed in notifying it of Heartwood's allegation of a wrongful act or claim. Republic alleges that as of June 22, 2018, PLM confirmed that it had no record of a request from Flinn to increase the business income limit in Heartwood's policy, yet Flinn did not notify Republic of Heartwood's claim or allegation of a wrongful act or error. (ECF No. 6 at PageID.123.) Republic further alleges that after Flinn received the November 11, 2018 email from Heartwood regarding a "serious

---

[3] *See* https://www.oed.com/view/Entry/125869?redirectedFrom=negligent#eid (last visited Feb. 24, 2021).

[4] In its reply, Flinn argues, for the first time, that Republic has not alleged that the emails Heartwood sent to Flinn in June and November of 2018 qualify as a "claim" as defined in the Policies. Because courts routinely decline to consider arguments or issues raised for the first time in a reply brief, *see Flowers*, 513 F.3d at 553 (raising an argument for the first time in a reply is not proper and deprives the non-moving party of an opportunity to respond); *Blandford v. Exxon Mobile Corp.*, 483 F. App'x 153, 161 (6th Cir. 2012) ("This court has consistently held that arguments raised for the first time in a reply brief are waived."), I will not consider this argument. In any event, even if the emails cannot be considered a "claim," they can still provide notice of a "wrongful act."

problem" and "a mistake," Flinn still did not notify Republic of Heartwood's claim or allegation of "an error or wrongful act." (*Id.*) Republic further alleges that Flinn did not notify it of Heartwood's claim of a wrongful act or error until over 1 year and 3 months after Flinn first learned of Heartwood's allegations. (*Id.* at PageID.124.) Further on in the amended complaint, Republic sets forth the Policies' notice provisions and alleges that Flinn failed to timely notify it of a wrongful act or claim. (*Id.* at PageID.127–29.) These allegations suffice to state a claim, as they provide more than a speculative basis for concluding that Flinn breached its duties to Republic under the Policies.

### III.    CONCLUSION

For the foregoing reasons, I recommend that the Court **deny** Flinn's motion to dismiss (ECF No. 10) and exercise jurisdiction over this matter.


Dated: February 25, 2021                          /s/ Sally J. Berens
                                                  SALLY J. BERENS
                                                  U.S. Magistrate Judge


### NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).